STATE ex rel. JAY BEE STORES, INC.,
a corporation, Relator,

v.

Hon. Ninian EDWARDS, Judge of
Division 12, St. Louis County
Circuit Court, Respondent.

No. 63356.

Supreme Court of Missouri,
En Banc.

Aug. 2, 1982.

Stuart J. Radloff, David L. Campbell, Campbell & Radloff, St. Louis, for relator.

Walter L. Brady, Jr., Robert J. O'Hanlon, Lee, O'Hanlon & Brady, St. Louis, for respondent.

WELLIVER, Judge.

Relator Jay Bee Stores, Inc. seeks a writ of mandamus ordering respondent to over-

rule the fifth amendment privilege claims of Alan Fink and Robert Cockrum, defendants in the underlying lawsuit, and to order Fink and Cockrum to produce the documents relator requests. This Court has jurisdiction under Mo.Const. art. V, § 4(1). *Our alternative writ is made peremptory.*

On March 27, 1981, relator contracted with Cockrum & Fink Business & Industrial Auctioneers, Inc. (hereinafter Cockrum & Fink) to auction the inventory and equipment of one of relator's supermarkets. The contract provided among other things that Cockrum & Fink was to "keep and maintain all records pertaining to the conduct of the auction, the sale of goods and collection of monies and ... make available for [relator's] examination and inspection all such books, records and statements pertaining to said public auction." The contract further provided for the appointment of two tellers, one by each of the parties, and specified that all auction proceeds were to be delivered to the teller that relator appointed. The two tellers then were to deliver the funds into a special escrow account established at a local bank. The parties also executed an escrow agreement at the same time they executed the contract. Fink signed both documents as a representative of Cockrum & Fink, a corporation, and on the escrow agreement he was designated as the president of the corporation.

Relator discovered after the auction that, contrary to the contract, Cockrum & Fink had accepted payment from some purchasers directly. Defendant Fink tendered a post-dated check, signed by him, for $78,257 payable to relator's order and drawn on the account of "Manchester Fixture Corporation." That account, however, had been closed April 24, 1981, and the check therefore was worthless. Relator then demanded that Cockrum & Fink produce the auction records pursuant to the contract, but that demand was not met.

Relator thereafter brought suit against Fink and Cockrum both individually and as statutory trustees of the corporation, which relator discovered had forfeited its charter January 1, 1980, for failure to submit its annual registration report. That lawsuit, which underlies this mandamus action, seeks recovery of the auction records and damages for conversion of the auction proceeds.[1] Around the same time, defendant Fink was indicted by a St. Louis County grand jury for appropriating "U. S. currency of a value of at least one hundred fifty dollars, which said property was owned by Jay Bee Stores, Inc."

Pursuant to the civil suit, relator filed a request for production of documents and a request for admissions under Rules 58.01 and 59.01. Defendants Fink and Cockrum refused both to produce the requested documents and to respond to the request for admissions on the ground that any production or response might tend to incriminate them. U.S.Const.Amend. V. Relator then requested the trial judge, respondent herein, to impose sanctions under Rule 61.01(c)–(d) for failure to comply with the discovery request. Respondent refused, indicating that he would sustain the privilege claims and overrule the request for discovery sanctions. Relator thereafter sought a writ of mandamus ordering respondent to overrule the claims of privilege and to order production of the requested documents. This Court issued its alternative writ.

■ This Court will issue a writ of mandamus "only when it is shown that the party requesting the writ has a clear and unequivocal right to the relief requested" because the purpose of the writ "is to execute, not adjudicate." *State ex rel. Commissioners of the State Tax Commission v. Schneider,* 609 S.W.2d 149, 151 (Mo. banc 1980). Mandamus is a discretionary reme-

---

1. Counts I and II are alternative theories under which relator seeks recovery of the auction books and records. Count I asks that the court enjoin defendants Fink and Cockrum from destroying the auction records and compel them to produce all books and records pertaining to the auction. Count II is a replevin action. In Count III relator seeks actual and punitive damages for conversion of the auction proceeds. The records relator seeks in its request for production of documents are relevant to determine the amount of actual damages and are the same records it seeks in Counts I and II.

dy, not a writ of right. *Norval v. Whitesell,* 605 S.W.2d 789, 791 (Mo. banc 1980). It "will not lie when the right sought to be enforced is doubtful; it is an appropriate remedy only where the right to relief is clear and unequivocal." *State ex rel. Keeven v. City of Hazelwood,* 585 S.W.2d 557, 559 (Mo.App.1979).

It is manifest from the record that relator was led to believe that it was dealing with the corporation and not personally with the individual defendants in the underlying lawsuit. Relator contracted with the corporation in both the auctioneering contract and escrow agreement. Fink signed both documents as a representative of the corporation. On the escrow agreement he is designated as its president. The newspaper advertisement of the auction listed the corporation as the auctioneer, and the corporation advertised its services in the 1981 edition of the St. Louis Yellow Pages telephone directory.

Statutory trustees of a defunct corporation, *see* § 351.525, RSMo Supp. 1981, have no authority to transact new business in the name of the corporation after the corporation's demise and are jointly and severally liable for any obligations they so incur. *Leibson v. Henry,* 356 Mo. 953, 962, 204 S.W.2d 310, 316 (banc 1947). Fink, as president of the corporation and thus a statutory trustee, would be personally obligated on the contract.[2] His personal liability, however, is a matter wholly apart from his right to assert the existence or nonexistence of the corporation. Fink cannot consistently enter into the contract in the name of the corporation and deny now

that the corporation existed at that time. *Schneider v. Best Truck Lines, Inc.,* 472 S.W.2d 655, 659 (Mo.App.1971). He is estopped from claiming now that relator dealt with him as an individual rather than as a representative of the corporation.[3]

*Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), suggests that one may not invoke the fifth amendment to prevent disclosure of even personal documents unless he was compelled by the government to write them. *Id.* at 410 n.11, 96 S.Ct. at 1580 n.11. In this case *Fisher* need not be read or applied so broadly. It is necessary to say only that the fifth amendment privilege against self-incrimination does not attach to the records of corporations. *Grant v. United States,* 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913); *Wheeler v. United States,* 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309 (1913); *Dreier v. United States,* 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911); *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). "[A]n individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Bellis v. United States,* 417 U.S. 85, 88, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974). Because Fink is estopped from claiming that relator dealt with him in an individual, rather than a representative, capacity, the fifth amendment does not shield him.

Were Fink considered a sole proprietor,[4] his relationship with relator nonethe-

---

**2.** It is unclear who besides Fink is a statutory trustee. No officers or directors were ever designated in the files of the secretary of state. Nothing in the record discloses that Cockrum was ever an officer or director, although we might presume that he was from the fact that his name appears, and is listed first, in the corporate name. It is unnecessary, however, to determine whether he ever was, in fact, an officer or director.

**3.** Relator is not estopped from asserting that Fink is estopped from denying the existence of the corporation because of relator's pleading that Fink and Cockrum were "carrying on busi-

ness as individuals, or in the alternative as partners." The estoppel "has reference to the time of such contract or dealing" and therefore "does not prevent such an attack for causes arising afterward by a plea of nonexistence of the corporation at the time of the action ... or by reason of a judgment of forfeiture or ouster in a property proceeding." 18 C.J.S. *Corporations* § 111(b), at 514 (1939).

**4.** It is noteworthy that Fink and Cockrum in their answer denied relator's allegation that they were "carrying on business as individuals, or in the alternative as partners."

less would preclude him from invoking the fifth amendment. An auctioneer is an agent for his seller. *Coleman v. Duncan*, 540 S.W.2d 935, 937 (Mo.App.1976). As such he stands in a confidential or fiduciary relationship with him. *See McKeehan v. Wittels*, 508 S.W.2d 277, 280 (Mo.App.1974). The seller, as principal, has a clear interest in the records of his sale, and relator therefore has a right of access to the records he seeks. Indeed, the contract provides that "[t]he Auctioneer shall keep and maintain all records pertaining to the conduct of the auction, the sale of goods and collection of monies and shall make available for [relator's] examination and inspection all such books, records and statements pertaining to said public auction." Cockrum, although he did not sign the contract, would be similarly bound. Any connection he may have had with Fink as a partner, associate, or employee would render him a subagent of relator bound by the same principles of loyalty.[5]

■ Fink and Cockrum, defendants below, are not entitled to invoke the fifth amendment privilege against self-incrimination in order to prevent disclosure of the records that relator seeks. The record before us speaks for itself. Mandamus will lie because relator "has a clear and unequivocal right" to examine the records. *State ex rel. Commissioners of the State Tax Commission v. Schneider*, 609 S.W.2d at 151. Respondent erred in sustaining the claims of privilege.

Our alternative writ is made peremptory.

DONNELLY, C. J., MORGAN, HIGGINS, JJ., and STOCKARD, Special Judge, concur.

BARDGETT, J., concurs in result in separate opinion filed.

SEILER, J., dubitante.

RENDLEN, J., not sitting.

BARDGETT, Judge, concurring in result.

I concur in result for the reasons stated below.

Cockrum & Fink contracted with relator to auction relator's property and as part of that contract Cockrum & Fink agreed to "maintain all records pertaining to the conduct of the auction, the sale of goods and collection of monies and shall make available for Jay Bee's examination and inspection all such books, records and statements pertaining to said public auction."

In *City of Kansas City v. Carter*, 610 S.W.2d 104 (Mo.App.1980), the court of appeals said:

The pro se defendant invokes only the Fifth Amendment to protect him from that incrimination of the business records, but he does not draw himself within even the principle. The Fifth Amendment grants a personal privilege: it protects a born person [*Couch v. United States*, 409 U.S. 322, 328 [6–8], 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973)] not an artificial person such as a corporation [*Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911)] or a partnership or the component partners [*Bellis v. United States*, 417 U.S. 85, 88 [3–5], 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974)], or an individual who holds the records as custodian [*United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944)]. The papers and effects which the privilege protects must be *the private property* of the person who claims the privilege, or who, at least, possesses in a purely personal capacity. *Bellis v. United States, supra*, l.c. 90[5], 94 S.Ct. at 2184.

*Id.* at 107.

The same is true of the records sought in this case. These records were not the sole property of Cockrum & Fink but they (Cockrum & Fink) were the custodians of

---

**5.** The fifth amendment principles relating to corporate records would, of course, apply to Cockrum as well as Fink if it were shown that Cockrum was an officer, director, shareholder, or even an employee of the corporation. In addition, the fifth amendment would provide no protection if the records relator seeks were considered those of a partnership between Cockrum and Fink. *See Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).

the auction records—business records—for the benefit of relator. The fifth amendment does not afford Cockrum & Fink the right to refuse production of that kind of record for the reasons stated in *City of Kansas City v. Carter, supra.*

The reason I file this opinion is because I do not agree that *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), contains the suggestion attributed to it in the principal opinion, nor am I satisfied that these records are the records of a corporation. In short, I think the principal opinion unnecessarily paints with too broad a brush and permits implications in this important area of constitutional rights that are not necessary to the decision and perhaps incorrect.

For the reasons stated I concur in result.