

# In the Missouri Court of Appeals
# Eastern District
## DIVISON FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101236 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | |
| CARLTON PORTER, | ) | Honorable Christopher E. McGraugh |
| | ) | |
| Appellant. | ) | Filed: June 16, 2015 |

### *Introduction*

Carlton Porter (Defendant) appeals the judgment of conviction entered by the Circuit Court of the City of St. Louis after a jury found him guilty of trafficking drugs in the second degree, possession of a controlled substance with the intent to distribute, and possession of drug paraphernalia with the intent to use. Defendant claims that the trial court erred in: (1) overruling his motion for judgment of acquittal on the charge of possession of drug paraphernalia with the intent to use; and (2) failing to dismiss on double jeopardy grounds the charge of possession of a controlled substance with the intent to distribute. We affirm.

### *Factual and Procedural Background*

Viewed in the light most favorable to the verdict, the evidence at trial revealed the following: On February 22, 2012, while conducting surveillance in an area with "a lot of PCP [phencyclidine] being sold or bought," Officers Mark Pasionek and Jarrett Neff from the St. Louis Metropolitan Police Department (SLMPD) observed Defendant approach a blue vehicle,

talk briefly with the vehicle's passenger, and walk across the street. Once across the street, Defendant kneeled down, retrieved a bottle and package of More-brand cigarettes[1] from a hole in the ground, dipped a More cigarette into the bottle, and "inhale[d] the cigarette to … get the liquid up into the cigarette." Defendant then returned to the vehicle and engaged in a "hand-to-hand transaction" with the passenger. After the vehicle drove away, the officers contacted Officer Ryan Murphy and instructed him to detain the vehicle. When Officer Murphy pulled over the vehicle, he seized a More cigarette "dipped in" what was later determined to be, PCP.

Approximately forty-five minutes later, Officers Pasionek and Neff observed a black vehicle stop at the same location as the first vehicle. Defendant approached the vehicle and spoke with the passenger. Defendant then returned to the hole across the street, removed a More cigarette, dipped it in the bottle, and "inhaled" the liquid into the cigarette. Defendant returned to the black vehicle and handed the More cigarette to the passenger in exchange for money. After the black vehicle drove away, the officers contacted Officers Matthew Frichtl and Andrew Kleffner, who stopped the car and seized a More cigarette containing a substance later determined to be PCP.

At the request of Officers Pasionek and Neff, Officers Andrew Kleffner, Ryan Kinhorst, Ryan Murphy, and Miguel DeBourg conducted a pedestrian stop of Defendant at their surveillance location. The officers also searched the hole from which Officers Pasionek and Neff observed Defendant retrieve the bottle and More cigarettes after speaking with the passengers. From the hole, the officers seized the bottle and More cigarettes that Defendant used during his transactions with the passengers. A criminalist in the SLMPD laboratory tested the bottle's contents and determined it contained 31.43 grams of liquid PCP.

---

[1] At trial, Officer Pasionek testified that More cigarettes "are commonly used for PCP...."

The State charged Defendant as a prior and persistent offender with class A trafficking drugs in the second degree (Count I), class B trafficking drugs in the second degree (Count II), possession of a controlled substance with the intent to distribute (Counts III and IV), and possession of drug paraphernalia with the intent to use (Count V).[2]  Prior to trial, Defendant filed a motion to dismiss Counts I and II or Counts III and IV for double jeopardy violations.  The trial court held a hearing on Defendant's motion and denied the motion to dismiss, finding that the offenses had "different elements under law."

The trial court held a jury trial, and the State presented the testimony of several police officers involved in the investigation.  Defendant presented the testimony of an investigator, who explained that Officers Pasionek and Neff conducted surveillance of Defendant's transactions from forty to fifty yards away.  At the close of all evidence, Defendant moved for judgment of acquittal, and the trial court denied the motion.

After the trial, the jury found Defendant guilty of trafficking drugs in the second degree, possession of a controlled substance with the intent to distribute, and possession of drug paraphernalia with the intent to use.  The trial court sentenced Defendant as a prior and persistent offender to concurrent sentences of twelve years' imprisonment for trafficking, twelve years' imprisonment for possession of a controlled substance with the intent to distribute, and one year's incarceration for possession of drug paraphernalia with the intent to use.  Defendant appeals.

---

[2] Counts I and III were based on the State's allegation that Defendant possessed six grams or more of a cocaine base substance and that he intended to distribute it.  The jury found Defendant not guilty on both counts.

3

## Standard of Review

Our review of a challenge to the sufficiency of the evidence supporting a criminal conviction is limited to a determination of "whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." State v. Primm, 347 S.W.3d 66, 72 (Mo. banc 2011). This court views the evidence "in the light most favorable to the verdict, considering all favorable inferences and disregarding all contrary inferences." Id.

"Whether an individual's right to be free from double jeopardy has been violated is a question of law, which an appellate court reviews de novo." State v. Kamaka, 277 S.W.3d 807, 810 (Mo.App.W.D. 2009). Under de novo review, we need not defer to the trial court's determination of law. State v. Williams, 24 S.W.3d 101, 110 (Mo.App.W.D. 2000).

## Discussion

In his first point, Defendant asserts that the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence on the charge of possession of drug paraphernalia with the intent to use. Defendant contends that the State failed to present evidence that he possessed the More cigarettes "with the intent to use them to consume a controlled substance." The State counters that it presented sufficient evidence that Defendant possessed the More cigarettes with the intent to use them "to ingest, inhale, or otherwise introduce into the human body a controlled substance."

Section 195.233 provides, in relevant part, that: "It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to … inject, ingest, inhale, or otherwise introduce into the human body a controlled substance or an imitation controlled substance[.]"

4

Mo. Rev. Stat. § 195.233. "[I]ntent can be proven by circumstantial evidence." State v. Wood, 301 S.W.3d 578, 583 (Mo.App.S.D. 2010).

Here, the trial court instructed the jury that, to find Defendant guilty of the possession of drug paraphernalia with the intent to use, it had to find that:

> First, …. The defendant possessed More cigarettes, and Second, that the More cigarettes were drug paraphernalia, and Third, that defendant knew or was aware of its presence and nature, and Fourth, that defendant intended to use the More cigarettes, to ingest, inhale, or otherwise introduce into the human body a controlled substance[.]

Defendant does not challenge the sufficiency of the evidence supporting the first three elements. Rather, Defendant maintains that the State failed to present any evidence that he intended to use the More cigarettes to ingest, inhale, or otherwise introduce into the human body a controlled substance.

Our review of the record reveals the following evidence relating to the More cigarettes: At trial, Officer Pasionek testified that More cigarettes "are commonly used for PCP because they're brown [and] … when you dip it in the PCP, it leaves a stain around it, so when the cigarette's brown, it covers up the brownness."[3] He also explained that he observed Defendant make the "distinctive motion" to get PCP into the cigarette in which "you have to inhale the cigarette … to get the liquid [PCP] up in the cigarette." Officer Pasionek further stated that he observed Defendant hand the More cigarette containing PCP to the vehicles' passengers in exchange for money. Additionally, the officer who seized the More cigarettes and bottle containing PCP testified that the More cigarettes and bottle were located together in the hole under the sidewalk. Based on the above evidence, we conclude that a jury could reasonably find

---

[3] Officer Murphy also testified that it was "common for More cigarettes to be dipped into PCP." Officer Kleffner explained that More cigarettes are "commonly used to ingest PCP," and Officer Brittany Cange stated that More cigarettes are "commonly affiliated" with PCP.

5

that Defendant intended the More cigarettes to be used by the vehicles' passengers to ingest, inhale, or otherwise introduce PCP into the human body. See, e.g., State v. Brown, 801 S.W.2d 474, 477 (Mo.App.S.D. 1990) (concluding that "the fact that a supply of marijuana was readily available in the same room and close to the location where the rolling papers were found provided a basis upon which reasonable persons could find that the rolling papers were intended by defendant to be used in making marijuana cigarettes").

Defendant contends that the evidence did not support a finding that he "possessed cigarettes with the intent to use them to ingest PCP." However, Defendant cites no authority to support his contention that the drugs must be intended for use by him. "The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." State ex rel. Wolfrum v. Wiesman, 225 S.W.3d 409, 411 (Mo. banc 2007). We presume the legislature intended every word, clause, sentence, and provision of a statute to have effect. Nelson v. State, 250 S.W.3d 386, 392 (Mo.App.E.D. 2008). The statute provides that it is unlawful "to possess with intent to use, drug paraphernalia to … inject, ingest, inhale, or otherwise introduce into *the* human body." Mo. Rev. Stat. § 195.233 (emphasis added). The statute does not require that the defendant possess the paraphernalia with the intent to inject, ingest, inhale, or otherwise introduce the drug into "his or her human body." Because the legislature chose to use the word "the" instead of "his or her," we presume that it did not intend to proscribe possession of drug paraphernalia only when the defendant intended to use that paraphernalia personally. Point denied.

In his second point, Defendant asserts that the trial court erred in failing to dismiss the charge of possession of a controlled substance with the intent to deliver because his convictions of trafficking drugs in the second degree and possession of a controlled substance with the intent

6

to deliver violated principles of double jeopardy. Specifically, Defendant alleges that he was subjected to multiple punishments for the same offense because: (1) "the legislature did not intend these two sections to be applied to the same criminal act at once"; and (2) "possessing a trafficking quantity of PCP is a specific instance of the generally prohibited conduct of possession of PCP with the intent to deliver." In response, the State argues that: (1) trafficking and possession with intent to deliver each contain an element that the other offense does not; and (2) trafficking is not a specific instance of possession with intent to deliver.

The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution provides two basic protections: "it protects defendants from successive prosecutions for the same offense after acquittal or conviction and it protects defendants against multiple punishments for the same offense." State v. Hardin, 429 S.W.3d 417, 421 (Mo. banc 2014). With respect to multiple punishments for the same offense, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Id. (quotation omitted). Thus, "[d]ouble jeopardy analysis regarding multiple punishments is… limited to determining whether cumulative punishments were intended by the legislature." State v. McTush, 827 S.W.2d 184, 186 (Mo. banc 1992). To determine whether the legislature intended cumulative punishments, we first look to the statutes under which a defendant was charged and convicted. State v. Garnett, 298 S.W.3d 919, 922 (Mo.App.E.D. 2009). Where, as here, the statutes are silent as to whether the legislature intended cumulative punishments, we next look to Section 556.041, the general cumulative punishment statute. State v. McTush, 827 S.W.2d 184, 187 (Mo. banc 1992). Section 556.041, in pertinent part, prohibits convicting a defendant of more than one offense if "[t]he offenses differ only in that one is defined to prohibit

7

a designated kind of conduct generally and the other to prohibit a specific instance of such conduct[.]" Mo. Rev. Stat. § 556.041(3).

Defendant asserts that the legislature did not intend the trafficking (§195.223) and possession with intent to deliver (§195.211) statutes to be applied to the same criminal conduct. However, the two statutes do not punish the same criminal conduct. Section 195.223.5 provides that a person commits the crime of trafficking drugs in the second degree if "he possesses or has under his control, purchases or attempts to purchase, or brings into this state more than thirty grams of a mixture or substance containing a detectable amount of phencyclidine (PCP)." Mo. Rev. Stat. § 195.223.5. Section 195.211.1 provides that "it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance." Mo. Rev. Stat. § 195.211.1 Section 195.223.5 requires a person to possess more than thirty grams of a mixture or substance containing a detectable amount of PCP, while Section 195.211.1 does not. Section 195.211.1 requires a person to have the intent to distribute, deliver, manufacture, or produce a controlled substance, while Section 195.223.5 does not. Because the two statutes do not apply to the same criminal conduct, we need not determine whether the legislature intended to prohibit or permit cumulative punishments under both statutes.[4]

---

[4] To support his position that the legislature did not intend multiple punishments under these two statutes, Defendant relies on State v. Polson, 145 S.W.3d 881, 896 (Mo.App.W.D. 2004). Polson is inapposite. In Polson, the defendant argued, and the court held, that his convictions violated section 556.041(1), which prohibits convicting a defendant of two offenses if one offense is a lesser-included offense of the other offense. Id. at 894. Here, Defendant neither challenges his convictions under section 556.041(1) nor argues that one offense is a lesser-included offense of the other.

Finally, Defendant contends that his convictions under sections 195.223 and 195.211 violate subsection (3) of the general cumulative punishment statute because "[t]rafficking (possessing 30 grams) is simply a more specific way of possessing a drug with the intent to distribute." Where the elements of two offenses are separate and distinct, neither offense is a specific instance of the other and section 556.041(3) does not preclude convictions for both offenses. State v. Hill, 970 S.W.2d 868, 871 (Mo.App.W.D. 1998). As discussed above, sections 195.223.5 and 195.211.1 have distinct and separate elements. Furthermore, contrary to Defendant's contention, trafficking is not a specific instance of possession with the intent to distribute because possession of a controlled substance with the intent to distribute requires a particular mental element – the intent to distribute – that trafficking does not.[5] See, e.g., State v. Dunn, 7 S.W.3d 427, 429 (Mo.App.W.D. 1999) (concluding that sexual abuse is not a specific instance of forcible rape because "sexual abuse has a particular mental element unique to it[.]"). Point denied.

### Conclusion

The judgment of the trial court is affirmed.

---

[5] Defendant asserts that "[t]he legislative intent behind the trafficking statute was to presume, through the possession of 30 grams of a substance, an intent to distribute or sell." However, Defendant cites no authority to support his assertion. Rather, "in determining the legislature's intent, we are required to consider and give meaning to all of the terms used in a statute." State v. Harris, 156 S.W.3d 817, 822 (Mo.App.W.D. 2005). "The statutory definition [of a term] should be followed in the interpretation of the statute to which it relates and is intended to apply and supersedes the commonly accepted dictionary or judicial definition and is binding on the courts." State ex rel. Nixon v. Estes, 108 S.W.3d 795, 798 (Mo.App.W.D. 2003). Section 195.223.5 defines the term "trafficking" by providing that a person commits the crime of trafficking in the second degree if "he possesses or has under his control, purchases or attempts to purchase, or brings into this state" more than thirty grams of PCP. Mo. Rev. Stat. § 195.223.5. Because the statute itself defines trafficking, we need not consider the commonly accepted dictionary definition as Defendant urges us to do.

9

_____
Patricia L. Cohen, Presiding Judge

Roy L. Richter, J., and
Robert M. Clayton III, J., concur.