In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

CORDELL NICHOLS, JR, ) No. ED109897
 )
 Appellant, ) Appeal from the Circuit Court
 ) of the City of St. Louis
 ) Case No. 2022-CC00200-01
 vs. )
 ) Honorable Craig E. Hellmann
THOMAS MCCARTHY, )
 )
 Respondent. ) Filed: December 14, 2021

 The petitioner, Cordell Nichols, Jr., appeals the judgment entered by the Circuit Court of

the City of St. Louis in favor of the respondent, Judge Thomas McCarthy, in this declaratory

judgment action. Nichols sought a declaration that Missouri Supreme Court Rule 33.01(c)

requires the circuit court to consider a defendant’s ability to pay when setting monetary

conditions of release in the initial arrest warrant in criminal cases.

 We hold Missouri Supreme Court Rules 22.04 and 33.01 require only that the court rely

on available information—meaning information present or ready for immediate use—when

setting bond in an initial arrest warrant. Generally, information regarding a defendant’s ability to

pay is not available to the court when it issues the initial warrant. Therefore, we further hold that

the rules do not impose upon police, prosecutors, and courts an obligation to investigate a

defendant’s financial resources and ability to pay before an initial warrant for arrest can be

issued under Rule 22.04. We affirm the trial court’s judgment.
 Factual and Procedural Background

 On December 30, 2019, Officer Smith of the St. Louis Metropolitan Police Department

was on patrol in the City of St. Louis. Officer Smith was advised of a suspect with a firearm on

the Metrolink train, and upon entering the train, security officers directed Officer Smith to

Nichols. Officer Smith conducted a pat down search for safety, and discovered a firearm

concealed in a nylon bag under Nichols’s sweatshirt. Officer Smith handcuffed Nichols, and

inquired into Nichols’s pedigree, which revealed a 2017 felony conviction for second-degree

burglary.

 On December 31, 2019, the State charged Nichols via complaint with the class D felony

of unlawful possession of a firearm. The probable cause statement accompanying the complaint

listed Nichols’s prior convictions: two charges of second-degree burglary in 2014 and 2017,

respectively; misdemeanor theft in 2017; receiving stolen property in 2013; and unauthorized use

of a weapon in 2011. Based on the complaint and probable cause statement, Judge McCarthy

issued an arrest warrant for Nichols on December 31. Judge McCarthy found reasonable grounds

to believe Nichols presented “a danger to the crime victim, the community, or another person,”

and set a monetary condition of release in the amount of “$30,000 cash only.” The only

information available to Judge McCarthy at the time he set this monetary condition of release

was the felony complaint and accompanying probable cause statement, neither of which

contained information about Nichols’s ability to pay a bond.

 The requirement for a $30,000 cash-only bond remained in effect for only two days. In

accordance with Rule 22.07, which requires a defendant arrested and confined under the initial

warrant to have a court appearance within 48 hours, Nichols appeared with counsel for his initial

appearance on January 2, 2020. Nichols submitted evidence regarding his prior convictions,

 2
current parole status for second-degree burglary, prior failure to appear in court on a charge of

second-degree robbery, financial resources, unemployment, mental health issues, education,

length of residence in St. Louis, and local family ties. At that time, Judge Lynne Perkins

determined “upon clear and convincing evidence, that no combination of non-monetary and

monetary conditions will secure the safety of the community or other persons,” and ordered

Nichols held without bond. In addition to the charge of unlawful possession of a firearm, Nichols

had a charge of second-degree robbery pending in the City of St. Louis, and an outstanding

warrant for his arrest for failure to appear in court. Nichols also had a prior conviction for

second-degree burglary in the City of St. Louis, and convictions for second-degree burglary,

receiving stolen property, unauthorized use of a weapon, and misdemeanor theft in St. Louis

County.

 Because Nichols continued to be confined, he had a bond hearing seven days later on

January 9, 2020 in accordance with Rule 33.05. Nichols was represented by counsel at this

hearing before Judge Scott Millikan. Nichols presented information about his inability to pay a

cash bond, and sought release on his own recognizance. The court, however, found “that no bond

and conditions will secure the safety of the community.” The court denied any change in the

bond, “finding that the clear and convincing evidence is that the current conditions are the least

restrictive to secure appearance and safety,” particularly in light of the pending robbery charge.

The court rejected Nichols’s argument that the initial arrest warrant should be recalled because

the monetary condition of release—$30,000 cash only—was set without any consideration of

Nichols’s ability to pay.

 Following his January 9 bond hearing, Nichols unsuccessfully sought relief via remedial

writ, which was summarily denied without opinion, and direct appeal, which was dismissed for

 3
lack of a final judgment. Nichols then filed a petition for declaratory judgment in the Circuit

Court for the City of St. Louis against Judge McCarthy in his official capacity as a judge of the

22nd Judicial Circuit, Associate Division. Nichols challenged the monetary condition of release

set in the initial arrest warrant, claiming the bond violated Missouri law as well as a preliminary

injunction entered by the U.S. District Court for the Eastern District of Missouri in the case of

Dixon v. City of St. Louis.1 Nichols requested the circuit court “enter its judgment declaring that

Respondent is required to consider evidence of ability to pay when fixing monetary conditions of

release in bonds and initial arrest warrants.” Nichols claimed he had no adequate remedy at law

because he had already been denied relief via both remedial writ and direct appeal in the

appellate court and the Supreme Court.

 The Missouri Attorney General’s Office filed a motion to dismiss on behalf of Judge

McCarthy, arguing the circuit court should dismiss Nichols’s petition for failing to state a claim

because an adequate remedy exists, namely a writ of mandamus. The motion pointed out that

Nichols had, in fact, already sought that remedy, albeit unsuccessfully. The circuit court granted

the motion to dismiss, reasoning that Nichols had an adequate remedy at law in the form of a

remedial writ in a higher court. Nichols appealed to this Court, and we reversed and remanded,

1
 The referenced federal case, Dixon v. City of St. Louis, was dismissed following significant changes to Missouri
Supreme Court Rules and pretrial detention practices and procedures. Case No. 4:19-cv-0112-AGF, 2021 WL
4709749, at *11 (E.D. Mo. Oct. 8, 2021). The Dixon plaintiffs filed an action under 42 U.S.C. 1983 challenging the
constitutionality of the procedures by which the defendant state and city officials set monetary bail. Dixon v. City of
St. Louis, 950 F.3d 1052, 1054 (8th Cir. 2020). The plaintiffs alleged a system of pretrial detention where the courts
routinely ordered secured bail shortly after arrest without an individualized determination of the defendant’s ability
to pay, risk of flight, or danger to the public. Id. at 1055. The federal district court entered a preliminary injunction
enjoining the enforcement of any monetary condition of release resulting in detention unless findings support that
detention is necessary because there are no less restrictive alternatives to ensure the defendant’s appearance or
public safety. Id. at 1054. The Eighth Circuit vacated the injunction and remanded the case, concluding that the
district court failed to adequately consider Missouri’s new Rules of Criminal Procedure implemented to address the
very procedures the Dixon plaintiffs challenged. Id. at 1055-56. The. U.S. District Court dismissed the action
October 8, 2021 because “Defendants’ practices have evolved dramatically such that further proceedings on the
merits in this Court would offend doctrines of mootness and comity.” Dixon, 2021 WL 4709749, at *11.

 4
holding that when, as here, relief by remedial writ is denied without opinion, the denial does not

constitute a decision on the merits and has no preclusive effect. Nichols v. McCarthy, 609

S.W.3d 483, 486-87 (Mo. App. E.D. 2020)(“Nichols I”). Because Nichols was unable to obtain a

decision on the merits of his claim, he had no adequate remedy at law. Id. at 487. As a result,

Nichols was entitled to a declaration of rights under the Declaratory Judgment Act. Id.

 On remand, the parties stipulated to the following facts and proceeded to a bench trial:

 a) When Judge McCarthy issued the initial arrest warrant in the case at issue, criminal
 cause number 1922-CR03961, the only information available to him was the felony
 complaint and the probable cause statement.
 b) Neither the felony complaint nor the probable cause statement in the case at issue
 contained any information about [Nichols’s] ability to pay.
 c) Judge McCarthy set the bond in the initial arrest warrant in the case at issue in the
 amount of $30,000 cash only.

Nichols submitted ten exhibits as evidence, and argued a court could not impose a cash bond in

the absence of any information regarding the defendant’s ability to pay. He further argued the

rules imposed an obligation, that should be undertaken by the police or prosecutor prior to

issuance of the initial arrest warrant, to gather information regarding the defendant’s

employment and the ability of the defendant and his or her family to pay a cash bond.

 The trial court entered judgment in favor of Judge McCarthy. The trial court concluded

that neither the current nor former versions of the Missouri Rules of Criminal Procedure prohibit

the court from imposing a cash bond when no financial information regarding the defendant is

available. The trial court continued that if the Supreme Court intended to preclude circuit courts

from imposing cash bonds when no financial information is available, the Supreme Court could

have stated as such, but did not. The trial court ruled:

 Rule 22.04 also requires only “available information” which on its face does not
 require any gathering of information. In light of the realities of the logistics inherent to
 getting a warrant signed within required time parameters, it is entirely reasonable that the
 Supreme Court would not require such information gathering in light of the hearing that

 5
 is provided to defendants within 48 hours under Rule 33.01, and seven days thereafter if
 the defendant is still detained under Rule 33.05. This [c]ourt will not infer such an
 obligation in the current Rule 22.04 when the Supreme Court has not directed it.

(internal citations omitted). Nichols appeals.

 Discussion

 On appeal, Nichols claims the trial court erred in granting judgment in favor of Judge

McCarthy because Nichols pled and proved at trial a viable claim for declaration of rights as a

matter of law, and the judgment incorrectly declares and applies the law. Specifically, Nichols

contends Rule 33.01(c) requires the circuit court to consider ability to pay when fixing monetary

conditions of release in the initial arrest warrant in criminal cases involving bailable offenses,

and the current practice of setting arbitrary sums of monetary amounts in the initial arrest

warrant without considering the defendant’s ability to pay violates Missouri law.

 Standard of Review

 Our standard of review in a declaratory judgment action is the same as in any other

bench-tried case. Allsberry v. Flynn, 628 S.W.3d 392, 395 (Mo. banc 2021); Farber v. Metro.

Police Dep't of City of St. Louis, 558 S.W.3d 70, 73 (Mo. App. E.D. 2018). We will affirm the

trial court’s judgment unless it is not supported by substantial evidence, is against the weight of

the evidence, or erroneously declares or applies the law. Allsberry, 628 S.W.3d at 395; Farber,

558 S.W.3d at 73. We review de novo Nichols’s claims that the trial court erroneously declared

and applied the law. Allsberry, 628 S.W.3d at 395.

 We review de novo the interpretation of Missouri Supreme Court rules. State v. Ford, 351

S.W.3d 236, 238 (Mo. App. E.D. 2011). When interpreting Supreme Court rules, we apply

principles similar to those for interpreting statutes. Id. We determine the intent of our Supreme

Court from the rule’s language, and give the words used in the rule their plain and ordinary

 6
meaning. Id. We resort to statutory construction only when the language is ambiguous;

otherwise, we must give effect to the statute—or the rule—as written. State v. Haynes, 564

S.W.3d 780, 784 (Mo. App. E.D. 2018). A rule is considered ambiguous only when we cannot

ascertain the Supreme Court’s intent from the language used by giving the language its plain and

ordinary meaning. See id. (statute ambiguous only when we cannot ascertain legislative intent by

giving statute’s language its plain and ordinary meaning).

 Mootness Doctrine

 As we recognized in Nichols I, this appeal may be moot as to Nichols, but we decline to

dismiss on that basis. We find “the public-interest exception to the mootness doctrine applies

because the issue raised has general public interest and importance, and is likely to recur while

otherwise evading appellate review.” Nichols I, 609 S.W.3d at 491. Here, Nichols raises an issue

of general public interest and importance for all defendants for whom bond is set in the initial

arrest warrant, and the issue is a recurring one. Id. In addition, the issue will continue to evade

appellate review because defendants generally will have issues regarding bond resolved before

they can obtain a declaration of rights in the circuit court followed by appellate review. Id.

 Analysis

 “It is well-established that the incarceration of those who cannot afford to pay money

bail, without meaningful consideration of other possible alternatives, infringes on both due

process and equal protection requirements.” Dixon v. City of St. Louis, Case No. 4:19-cv-0112-

AGF, 2021 WL 4709749, at *1 (E.D. Mo. Oct. 8, 2021). It is undisputed that rules imposed by

the Missouri Supreme Court between July 1, 2019 and January 1, 2020 seek to protect

defendants from confinement pending trial based solely on the defendant’s ability to pay a

monetary bond. See Dixon v. City of St. Louis, 950 F.3d 1052, 1056 (8th Cir. 2020) (by updating

 7
cash bail rules, Missouri Supreme Court presumably used superintendence powers to signal

lower state courts that status quo was unacceptable). The new Supreme Court Rules clarify that a

court may not impose cash bond without an individualized assessment of a defendant’s financial

circumstances, flight risk, threat to public safety, and consideration of alternative release

conditions. Id. at 1055; Dixon, 2021 WL 4709749, at *2. In accordance with the new provisions

found in Missouri Supreme Court Rules 22.04(d), 22.07, 33.01, and 33.05, the 22nd Judicial

Circuit in the City of St. Louis implemented new practices and procedures to comply with the

rules. Changes in bond procedures in the City of St. Louis “resulted from substantial deliberation

and concerted effort by the [j]udges and staff leadership within the 22nd Circuit to comply with

the new mandates of Rule 33.01” now in effect. Id. at *8. These procedures were in place and

applied in Nichols’s case. Nevertheless, Nichols contends a court violates Missouri law when it

fails to assess a defendant’s ability to pay in setting bond in an initial arrest warrant.

 The State filed a complaint charging Nichols with the class D felony of unlawful

possession of a firearm, and the court on December 31, 2019 issued an initial warrant for his

arrest, which required a cash bond of $30,000. At that time, Missouri Supreme Court Rule

22.04(d) provided:2

 If a warrant is issued under this rule, the court shall take into account, on the basis of
 available information, the factors set forth in Rule 33.01(e) when setting the condition or
 combination of conditions of release, if any, required by Rule 33.01(b) and allowed by
 Rule 33.01(c).

2
 Rule 22.04(d) was amended effective January 1, 2020 to add the italicized language below:

 If a warrant is issued under this rule, the court shall take into account, on the basis of available information,
 which may include a written recommendation from the State, the factors set forth in Rule 33.01(e) when
 setting the condition or combination of conditions of release, if any, required by Rule 33.01(b) and allowed
 by Rule 33.01(c).

The amendment does not affect our analysis of the issue presented here.

 8
Emphasis added. Rule 33.01(e), fully set out below, requires the court to take into account,

“[b]ased on available information,” numerous specified factors, including the defendant’s

financial resources and ability to pay.

 Effective January 1, 2020, a defendant arrested and confined under an initial warrant for a

felony offense is entitled to an initial appearance before a judge no later than 48 hours, excluding

weekends and holidays, after confinement “under the warrant in the county that issued the

warrant or in a county with which the county issuing the warrant has a contractual agreement to

hold the defendant.” Rule 22.07. A defendant who continues in detention after the initial

appearance shall have his or her detention or conditions of release reviewed at a hearing by the

court no later than seven days, excluding weekends and holidays, after the initial appearance,

absent good cause shown by the parties or the court. Rule 33.05. At the hearing, the court shall

determine if the defendant shall be detained or released. Id.

 Rule 33.01 provides for the pre-trial release of defendants and setting of conditions for

release. The rule states in relevant part:

 (a) A defendant charged with a bailable offense shall be entitled to be released from
 custody pending trial or other stage of the criminal proceedings.

 ***

 (c) The court shall release the defendant on the defendant’s own recognizance subject
 only to the conditions under subsection (b) with no additional conditions of release
 unless the court determines such release will not secure the appearance of the
 defendant at trial, or at any other stage of the criminal proceedings, or the safety of
 the community or other person, including but not limited to the crime victims and
 witnesses. If the court so determines, it shall set and impose additional conditions of
 release pursuant to this subsection.

 ***

 When considering the least restrictive condition or combination of conditions of
 release to set and impose, the court shall first consider non-monetary conditions.
 Should the court determine non-monetary conditions alone will not secure the

 9
 appearance of the defendant at trial, or at any other stage of the criminal proceedings,
 or the safety of the community or other person, including but not limited to the crime
 victims and witnesses, then the court may consider monetary conditions or a
 combination of non-monetary and monetary conditions to satisfy the foregoing. After
 considering the defendant’s ability to pay, a monetary condition fixed at more than is
 necessary to secure the appearance of the defendant at trial, or at any other stage of
 the criminal proceedings, or the safety of the community or other person, including
 but not limited to the crime victims and witnesses, is impermissible.

 ***

 (e) In determining whether to detain the defendant pursuant to subsection (d) or release
 the defendant with a condition or combination of conditions of release, if any,
 pursuant to subsection (c), the court shall base its determination on the individual
 circumstances of the defendant and the case. Based on available information, the
 court shall take into account: the nature and circumstances of the offense charged; the
 weight of the evidence against the defendant; the defendant’s family ties,
 employment, financial resources, including ability to pay, character, and mental
 condition; the length of the defendant’s residence in the community; the defendant’s
 record of convictions; the defendant’s record of appearance at court proceedings or
 flight to avoid prosecution or failure to appear at court proceedings; whether the
 defendant was on probation, parole or release pending trial or appeal at the time the
 offense for which the court is considering detention or release was committed; and a
 validated evidentiary-based risk assessment tool approved by the Supreme Court of
 Missouri.

 (f) A court detaining or releasing the defendant under this rule shall enter an order stating
 the condition or combination of conditions of release, if any, set and imposed by the
 court. If the defendant is detained and unable to comply with any condition of release,
 the defendant shall have the right to a release hearing pursuant to Rule 33.05. At any
 hearing conducted under Rule 33, the court shall permit but not require either party
 to make a record on the defendant’s financial status and ability to pay any monetary
 condition. . . .

(Emphases added).

 Nichols had an initial court appearance on January 2, 2020, within 48 hours of his arrest,

under Rule 22.07. He was represented by counsel at the January 2 hearing, and submitted

evidence regarding his prior convictions, current parole status, prior failure to appear in court,

financial resources, unemployment, mental health issues, education, length of residence in St.

Louis, and local family ties. Determining “upon clear and convincing evidence, that no

 10
combination of non-monetary and monetary conditions will secure the safety of the community

or other persons,” the court ordered Nichols held without bond. In accordance with Rule 33.05,

Nichols appeared in court, and had a bond hearing on January 9, 2020, within seven days after

his initial court appearance. Nichols was represented by counsel at the January 9 hearing, and the

court conducted an individualized assessment of Nichols’s criminal record, flight risk, ability to

pay, and risk to public safety. Based on Nichols’s record, particularly the pending charge of

second-degree robbery for which Nichols previously failed to appear, the court found “that no

bond and conditions will secure the safety of the community,” and again ordered him held

without bond.

 Nichols does not dispute he appeared at these two hearings on January 2 and January 9,

2020 as required by Rules 22.07 and 33.05, respectively. He does not dispute that he submitted

evidence of his inability to pay a cash bond and the court considered such evidence at those two

hearings. Rather, relying on carefully selected language only from Rule 33.01(c), he contends the

rule requires the court “to consider [a defendant’s] ability to pay when fixing monetary

conditions of release on the initial arrest warrant in criminal cases involving bailable offenses.”

Nichols states in a conclusory fashion without analysis or support that “[n]otably this rule applies

to every instance in which the court may have an opportunity of fixing a monetary condition of

release, even ‘on the initial bonds.’”

 Nichols’s argument ignores the plain language of Rules 22.04(d) and 33.01(e). Rule

22.04 at the time of Nichols’s arrest stated that when a court issues an arrest warrant for a felony

offense, “the court shall take into account, on the basis of available information, the factors set

forth in Rule 33.01(e) when setting the condition or combination of conditions of release.” Rule

33.01(e) states in relevant part “[b]ased on available information, the court shall take into

 11
account . . . financial resources, including ability to pay . . .” along with numerous other factors.

“Available” means “present or ready for immediate use.” Available, MERRIAM-WEBSTER

https://www.merriam-webster.com/dictionary/available (last visited Dec. 8, 2021). Nichols does

not acknowledge in his brief that such language exists in the rules. He stipulated at trial,

however, that Judge McCarthy had no information available to him—no information present or

ready for immediate use—regarding Nichols’s financial circumstances when he set bond in the

initial arrest warrant. Judge McCarthy had available only a complaint and a probable cause

statement listing Nichols’s prior convictions, thus leading the judge to determine Nichols was “a

danger to the crime victim, the community or another person.”

 Nichols would have us strike the phrases “on the basis of available information” and

“based on available information” out of Rules 22.04(d) and 33.01(e), respectively. We decline to

do so. We presume the Supreme Court intended every word, clause, sentence, and provision of

its rules to have effect. See State v. Porter, 464 S.W.3d 250, 255 (Mo. App. E.D. 2015)(“We

presume the legislature intended every word, clause, sentence, and provision of a statute to have

effect.”). Because the Supreme Court saw fit to include the phrases “on the basis of available

information” and “based on available information” in Rules 22.04(d) and 33.01(e), respectively,

we presume the Supreme Court intended these phrases to have effect and to mean precisely what

they plainly and unambiguously state.

 Further, Nichols would have us read into Rule 33.01(c) a requirement that police or

prosecutors have an obligation to obtain detailed financial information about every defendant for

whom an initial warrant is issued. At trial, Nichols argued that if police can obtain a defendant’s

history of criminal convictions, then they just as readily should be able to obtain a defendant’s

employment history. When the trial court asked how police or prosecutors would obtain such

 12
information if the defendant invoked his or her Fifth Amendment rights, Nichols provided no

answer. Nichols also argued that the assessment of ability to pay before setting bond in an initial

warrant should extend to a defendant’s family members. When the trial court asked how police

or prosecutors would even know who family members were, Nichols again provided no answer.

 Nichols is effectively asking this Court to add language to Rules 22.04 and 33.01 to

impose an obligation on the State to investigate a defendant’s financial information prior to

issuance of an arrest warrant, and then require the court to consider these financial circumstances

when setting monetary bond on an initial arrest warrant. The language of the rules, however, is

not ambiguous, and does not impose such an obligation. We must give effect to the rules as

written, without reading additional requirements into them. Haynes, 564 S.W.3d at 784; Ford,

351 S.W.3d at 238. In short, we will not add words to a plainly-worded rule to alter its meaning.

If the Missouri Supreme Court intended for the circuit court to consider a defendant’s ability to

pay when setting bond in an initial arrest warrant, then the Court would have included this

language. We must interpret and apply the rules as the Supreme Court writes them. See Haynes,

564 S.W.3d at 787 (“We must interpret and apply the laws as the legislature writes them.”). To

do otherwise would require this Court to re-write the rules, and to legislate an obligation that

could raise other constitutional implications.

 Nichols refers us to the Supreme Court’s Missouri Task Force on Criminal Justice report.

Information provided to the public by the Missouri Task Force on Criminal Justice regarding the

new rule provisions supports our determination that police and prosecutors are not required to

investigate and provide information on a defendant’s ability to pay before the court may set a

monetary bond in the initial warrant for arrest.

 Determinations regarding pretrial release are to be made with the best information
 available. A defendant who is incarcerated because he or she is unable to comply with

 13
 the conditions of release set in the warrant for arrest must come before a judge in a
 timely manner. The judge then must hold a hearing at which the prosecutor and defendant
 can present evidence regarding appropriate conditions of release.

Emphases added. Missouri Task Force on Criminal Justice, KZIM KSIM https://www.

kzimksim.com/2019/07/16/missouri-task-force-on-criminal-justice/ (last visited Nov. 30, 2021).

In addition:

 While the rules establish factors and procedures for a judge’s consideration of whether it
 is appropriate to release a defendant pending trial as well as any conditions of pretrial
 release, nothing in the new rules mandate any particular result or otherwise remove a
 judge’s discretion to make decisions under the law.

Emphasis added. Id.

 Nichols argues that initial cash bonds set absent consideration of a defendant’s ability to

pay lacks an evidentiary basis, and he cites as supporting authority civil cases involving

judgments awarding child support, spousal maintenance, and attorney’s fees, and entering a civil

contempt judgment and commitment order for failure to pay court-ordered maintenance. We will

not address these cases individually, but will say they are clearly inapposite and irrelevant to the

issue before us. Nichols’s cited cases address final judgments ordering a party to pay a non-

refundable amount, often over the course of many years. Unlike an initial bond set in a criminal

arrest warrant, awards of child support, spousal maintenance, and attorney’s fees, and imposition

of civil contempt penalties for failure to pay a support award are final, appealable judgments, not

interlocutory orders. The civil judgments in Nichols’s cited cases require consideration of

different statutory factors, and have a different standard of review and application of law. In

addition, strict time parameters demand that initial bonds be set quickly—sometimes in the

middle of the night—with little information available to the judge, circumstances far different

from those in the civil cases Nichols cites. Initial bonds are reviewable within 48 hours and again

within another seven days as provided by the rules. The rules as well as the 22nd Judicial Circuit

 14
practice and procedures safeguard defendants’ procedural due process and equal protection

rights. Indeed, the rules require consideration of a defendant’s ability to pay and alternative

conditions of release, but the rules do not guarantee release on bond or mandate any particular

result. Consequently, Nichols’s argument and cited authority are not persuasive.

 Conclusion

 We must interpret and apply the rules as the Supreme Court writes them. We cannot read

selected portions of the rule in isolation so as to omit crucial language. Likewise, we cannot add

language to a plainly worded rule to impose additional requirements on parties or the courts.

 We hold Rules 22.04 and 33.01 require only that the court rely on available

information—meaning information present or ready for immediate use—when setting bond in

an initial arrest warrant. Generally, information regarding a defendant’s ability to pay is not

available to the court when it issues the initial warrant. Only if the information available at the

time includes information regarding the defendant’s ability to pay is the court required to

consider it. Therefore, we further hold that the rules do not impose upon police, prosecutors, and

courts an obligation to investigate a defendant’s financial resources and ability to pay before an

initial warrant for arrest can be issued under Rule 22.04. We affirm the trial court’s judgment.

 _________________________________
 Angela T. Quigless, J.

Philip M. Hess, P.J., and
Colleen Dolan, J., concur.

 15